The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention to what the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. Good morning. And we would first like to thank Charlotte School of Law and Dean Connison for his gracious hospitality to us. And a word of congratulations to Stacey Cargile, whom I understood, whom I understand won a writing competition featuring some of our cases today. Thank you. We will begin with Drakeford v. Tuomey. Ms. Walker. Good morning. May it please the Court, Helgi Walker for Appellant, Tuomey Hospital. With the Court's permission, I've reserved five minutes of my time for rebuttal. Tuomey Hospital is a non-profit charitable institution and the only hospital in the low-income, medically underserved community of Sumter, South Carolina. The $237 million judgment entered against it in this case is not only fatally flawed as a legal matter, but it will bankrupt the hospital. As an initial matter, there never should have been a second trial in the False Claims Act in this case. Even though all agreed below that Rule 61 requires a finding of prejudice before a new trial order can be granted, that finding was literally never made. And it cannot be made. The 17... And this is your first opportunity to raise that issue. Correct. This Court denied an evocatory review. Yes. And so the prejudice finding that would be essential to any Rule 61 compliance is impossible even to make now by this Court. Because the 17 pages of Mr. Martin's deposition testimony, out of the 50,000 pages of documents and evidence that the government submitted in this case, was relatively insignificant and cumulative of other evidence that had already been submitted. What about the fact that Mr. McEnany was not allowed to testify at the first trial? Government did not appeal Judge Perry's decision. Well, they didn't have to, I suppose, if he had decided to grant the motion for a new trial based on the exclusion of the deposition excerpts. It's not before you, Judge Diaz. They have not appealed. They didn't raise it either. Well, I guess the problem is this is a very strange case procedure because the government got relief for this issue with respect to the deposition excerpt. Their position is that it's just not the excerpts, it's also the testimony of this witness that was critical to their being able to show knowledge and rebut the affirmative defensive advice of counsel. The issue that is before this Court is our appeal of Judge Perry's order granting the new trial. Judge Perry's order was predicated on the exclusion of the 17 pages of the Martin testimony, not McEnany's. The other side did not appeal. What you mean is they didn't cross-appeal. They didn't cross-appeal. That's correct, yes. And it wasn't the appeal based on Judge Perry or to the district court, but to this court. They didn't appeal it, which they would have to do. They did not raise it. That's exactly right. And so that issue is not before us in terms of the testimony that ultimately did come up. It's the testimony of Martin we're talking about. Exactly right, Judge. Was that the only testimony basis for granting the new trial? That was Judge Perry's only basis for granting the new trial. He stood by his exclusion of Mr. McEnany. Well, he seemed somewhat confused at best, and Judge Perry was a very dear friend, and I'm not trying to discourage him anyway, but it did seem that there was some confusion as to what he had actually excluded. He had actually excluded, it was certainly the Martin testimony, and then there was confusion below about whether it was only the 17 pages or the entire Martin submission. But it was very clear, Judge Wynn, and the record shows this, that July 13th hearing shows that Judge Perry stood by his ruling on McEnany. He said, I am not concerned about that. Can we please, counsel, turn to the one I am concerned about? And that was Mr. Martin, and it bears emphasis that that 17 pages was the… He not only said, I'm not concerned about McEnany, he says the Fourth Circuit can handle that if they ever get to it. And it never has been raised to this court in a proper procedural posture. And so what we are reviewing is Judge Perry's ruling on the new trial based on Martin. Those 17 pages, even if there was error, was simply not prejudicial, and the ultimate result, it's important to remember the practical consequences here. To me, one, it had a $0 verdict under the False Claims Act. That new trial order opened the door to a $237 million judgment that is going to put our client out of business. If we agree with you, if we find that the district court abused its discretion in granting a new trial, and I think you were getting to this, what happens then? We would ask you, respectfully, to reinstate the verdict from the first trial. This court has that authority. Including the $44 million award of equitable damages? Because I don't see how you can get the False Claims Act reinstated without the Stark Law Special Neuroendocrine. So we think the interrogatory is flawed for many of the reasons you heard in our first appeal of this matter. But certainly if the new trial order is reversed, then the first jury verdict would be reinstated. But there was no jury verdict, at least with respect to the damage component of the Stark Law claim. Judge Perry entered that award on his own, and that was the reason why we reversed that decision. Yes, Judge Diaz, I'm referring to the verdict, the judgment that is on appeal now. The second jury verdict on the False Claims Act, second trial that we're up here on today. That would be, the first jury verdict would be reinstated, but Judge Duncan, you're right. We still have these equitable claims, and what should the court do about those? We would ask the court, in the interest of finality and repose, to make clear to the district court, again on remand, that the equitable claims are actually not available because the False Claims Act provides an adequate remedy at law. But if this court were not willing to address that issue proactively, we would be willing to litigate that below the equitable claims. But we think that there can't just be automatic liability on the equitable claims. Why not? Because we reversed in our first remand on the ground that there was no jury verdict to provide the constitutional underpinning for the equitable award. Why doesn't the jury verdict that we have now supply that? Three reasons, Judge Duncan. First of all, as we argued below, and we argued in the first appeal, the False Claims Act provides an adequate remedy at law. The fact that the government didn't win its False Claims Act case doesn't mean that that's not an adequate remedy. But there is no remedy per se under the Stark Law without the False Claims Act. Isn't the False Claims Act the vehicle by which one recovers under Stark Law? That's exactly correct, and that's why this case is so convoluted, because the government has bolted the False Claims Act onto the Stark Law. You're actually never supposed to be in court. You're supposed to be in front of the agency for a violation of the Stark Law. But getting back to your question, Judge Duncan, another reason why the equitable claims shouldn't be available on remand is that the government would at least have to be put through its paces of showing the elements of those equitable claims. Let's consider, for instance, their mistake-of-fact count five. Mistake-of-fact has particular traditional elements under state law. For instance, the government would have to show that it actually continued paying our invoices, and it was actually under the mistaken belief that they complied with the Stark Law. We think that's impossible to show after 2008 when the United States filed its complaint in this very case. So whether you agree with that or not, the point is there are elements of these claims that need to be shown consistent with due process. Those were never presented to this jury, the jury that entered the verdict of the False Claims Act? Your Honor, on the verdict that we are now on appeal on, no. That case was only about the False Claims Act. The equitable claims were held in abeyance pending the new trial and our trip up to this court today. So your position is there should be a third trial? No, Your Honor. As I said to Judge Duncan, we would ask this court to reverse on this black letter, Rule 61 error, and thereby avoid a lot of these other— So if you think the government has a remedy, an equitable remedy, what would you do then? As I was saying, we would actually ask this court to reach out and preemptively address this question of what becomes of the equitable remedies to avoid even further confusion in this case, which has suffered from a fair amount of confusion. But if you're not willing to do that, we would be willing to take a remand on the equitable claims, but the government should be put through its paces to actually prove those claims. And on what basis would you reach out and proactively address that issue? Are you saying that it's a pure question of law? It is a pure question of law whether the equitable remedies can somehow be automatically granted to the government on a remand when it's not actually proven the elements of that case. It's within this court's power, as you did in TUME 1, to clear up some questions of law to try to help the proceedings on remand go more smoothly. But the equitable damages award didn't come out of thin air. It was clearly tethered to the jury's finding that there was a violation of Stark Law, even though no damages were found under the False Claims Act. Yes, Judge Duncan, and that was going to be my third reason for why there can't be automatic liability under the Stark Law. If you agree with us on Rule 61 and we go back for more proceedings on the equitable claims, we think the Stark Law finding was woefully inadequate. The jury just checked the box that said TUME violated the Stark Law. We don't know how many claims violated the Stark Law. We don't know which doctors submitted them. We hadn't gotten to that point, and it was equally cursory, an equally cursory finding with respect to the False Claims Act that you want to revive. The court just found, the jury just said no damage, zero, under the False Claims Act. So there was no more supportive rationale for the False Claims Act finding, was there, than the Stark Law? No, but the Stark Law has a lot of complicated elements that just were never found below. For instance, who was the referring physician? The government never proved that. Why would it be the government's burden to prove that? Don't the governing regulations require the health care provider to provide the name of the referring physician? I had a question about that, because as I read the regulations, that is an obligation imposed on your client, not the government, to ascertain. The government's forms don't include a box for that, and the government, importantly in this case, didn't even submit a single claim that we submitted. There's not even actual claim in evidence here, so it was difficult to understand who even the referring physicians supposedly are. And you would think that with a quarter of a billion dollar jury verdict, the government could be bothered to put in evidence of one claim that we paid. There's not one UB form in this entire record. Although that seems to be somewhat a responsibility of yours as well, given that you're facing this verdict, and you have an obligation to, as I understand it, provide that information. Well, with respect, what Judge Stead said, for instance, in Harrison 2, is that the burden of proving damages is on the government. So too is the burden of proving liability for a false claim. And the Eighth Circuit in the Controser case said, in a similar situation, the government has not put in evidence of one claim, to the extent they're going to rely on the UB forms, has not put in evidence of one claim, and at least they have to provide one representative example. I'm simply saying it's not your burden to prove your case against yourself, putting in evidence that could show you've committed a violation. Correct, Judge Wynn. Although we don't think we made a violation, the government is prosecuting this case under the False Claims Act, which is an extreme remedy for a Stark Law violation. The primary remedy is supposed to be administrative. And if the government wants a refund, gross damages, if you will, they could have invoked that administrative process. But by bringing this under the False Claims Act, they are ratcheting up the liability to a ruinous, grossly disproportionate scope. There's no dispute, though, that the forms identified a position, either as an operating position or as an attending position, and that those positions were, in fact, included those who had signed these contracts. The only problem, as you say, is there's no link to showing that they were the actual referring position. That's what the statute actually requires, is that a doctor with a financial relationship makes a referral. But the ultimate problem on the Stark Law, if I might, in my limited time, is this. The jury never got the instruction that this court clearly delineated in 2 Me 1. So we can debate the meaning of the Stark Law, we can debate what's required. In the opinion for this court, Judge Duncan wrote that the question on remand for the jury was whether the contracts on their face varied with the value or the volume of the referrals. Judge Seymour never gave that instruction. We urged it vigorously, Your Honor. What was the harm as a result of that? The harm, Your Honor, is that the jury was allowed to find a Stark violation based on intent alone. And that certainly is not what this court intended when it wrote 2 Me 1 and handed those instructions down to the district court. I'm not sure about – I mean, intent is relevant, obviously, to the false claims case. And I think what we meant by on its face was there's, I guess, two ways to violate the Stark Law. One, you generate or create a contract that on its face is simply not consistent with the law, or you have a facially valid contract in which an operation is imposed in violation of the law. So I don't see – the facts of this case don't seem to suggest that either one of those things, at least the latter, didn't happen. Judge Wynn, we will never know what the jury relied on. I'll take that as a compliment. I'm sorry. Thank you, Judge. I'm sorry, Judge Diaz. I do know that. It's a new environment. We will never know. That is the problem. Because Judge Seymour refused to give that instruction, surely this court meant that some different instruction that had been given the first time was intended. As the person who wrote those words, let me intervene here. We were responding with respect to that language to Toomey's argument that subjective intent is relevant. Because the opinion is replete with constructs that make it clear that it wasn't to be viewed literally as a requirement, I think. We were just clarifying in response to the argument from Villefayne. The language came from Villefayne. Exactly right. And so I think what the court was trying to make clear, if nothing else, was, as the court said, that intent alone is not sufficient. And because Judge Seymour never even tracked language of Toomey 1, she gave the same instruction that Judge Perry gave, it is possible that the jury did rely on intent alone. We will never know. And because of that possibility, that's the ultimate problem on the start block. I read that language pretty much as you do. And I'm looking at it with the court constructed that the question that should properly be put to the jury is whether contract on their base took into account the value of the argument. I do recall you indicating that you specifically asked for that instruction. And I appreciate the rationale and the basis for that that's being given here today. But in my view, that set, even if it's not technically the way it should be, is the law of this case. And maybe the reasons and rationales that are given here today are reasonable. But nonetheless, the law of this case is set right here in front of you. I've got to agree with you on that. I don't know how we can get around it. Yes, Judge. When we asked vigorously for the district court to follow that advice, the government argued to Judge Seymour that that language was, quote, a mistake. Well, that certainly is not the law of the case if it is sufficiently ambiguous. Right. I guess the point is, Judge Duncan, it must have meant something different. We can perhaps talk about what it exactly means. I think we can agree that it means that you don't lose on the basis of intent alone. Correct. And because the jury was never told that, it is a possibility, we think probably a reality, that the jury did find a stark violation based on intent alone. There was a tremendous amount of other evidence based on the contracts themselves about the relationship between compensation and referrals. There was a lot more here than simply intent. So, the problem with a general verdict like this, when the government advances multiple theories of liability, is your question is getting to, Judge Duncan. They adduced evidence of intent. They adduced some other evidence. They brought forward some other theories. When we have a general verdict that's based on multiple theories of liability and one theory is legally erroneous, then the entire verdict must fall. This court most recently said that in Tire Engineering. Judge Diaz, you wrote separately to reinforce that point vigorously. If any one of these theories is wrong and the intent theory is out there because Judge Seymour never gave any limiting instructions, then the entire verdict on the Stark Law has to fail. I don't understand. There was a plethora of evidence that the physician's base salary varied with net cash collections and included the productivity and bonus incentive payment. Which on its face suggests that the physician is receiving more than fair market value. It's hard for me to see how you can suggest that the violation, if there is such, was not... There isn't more than enough evidence to support the conclusion that the actions were based on more than intent. I'll answer that in two parts. Because we don't know what the jury did, they could have found a violation based on intent alone and that is enough to render the verdict invalid. But going to your point, Judge Duncan, the Stark Law expressly permits a productivity bonus that is based on the doctor's own collections for their personally performed services and not facility fees. And if we look at the language of the actual contracts here at Joint Appendix 4172, they say that the salary shall be adjusted based upon the doctor's collections. That is explicitly permissible under the statute itself. 1395 NNE2 says a productivity bonus based on the services provided by the doctor, him or herself, does not run afoul of the very same standard. What about the fact that tied into that productivity bonus was an exclusivity provision that required these doctors to perform their services at the hospital? The evidence did not show that respectfully, Judge Diaz. We think it showed that that material was never used in actually setting the compensation. But even if you think there's a basis for... I don't understand that. What do you mean that that material was never used? That was part of the contract, right? It was not part of the contract and that's what our expert, Ms. Ciccone, testified. The government tried to get her to say that she used that, but she said she didn't. Everyone was free to disregard Ms. Ciccone, and evidently did. And the facility fee covered, as I understood it, the facility fees of the outpatient charges was designed to cover also the related facilities costs of the provision of services beyond the specific procedure performed by the physician. We think the evidence does not support that conclusion. But even if you felt that there was sufficient evidence for a Stark Law violation, the government still had major problems under its False Claims Act theory, which are twofold. There is no false statement here within the meaning of circuit precedent. Ground and root, Judge Wilkinson said that to have a false statement, to have something be false, it has to be a statement of fact that can be a judge true or false in an empirically verifiable way. We think there is no objectively false statement here. This is a difference in interpretation arising out of a disputed legal question. Notably, Judge Perry gave us that instruction the first time around, and Judge Seymour refused to do it. She left out an entire strand of this circuit's jurisprudence on what can be fairly characterized as false in a False Claims Act case. Secondly, the government sought gross damages. They sought essentially the disgorgement remedy that would have been available to them in the administrative proceeding. Again, circuit precedent stands directly in their way. Secondly, Harrison 2 says that under the False Claims Act, damages means damages. It means your actual loss. And the argument that the relator made there was that because the contract was void ab initio, the contractor had not complied with core bidding eligibility requirements, they should get back every dollar that the government paid. Judge Shedd, writing for this court, said no. The government has to show that they paid more to that contractor than they would have paid to somebody else. And failing that kind of evidence, there were no actual damages in Harrison 2. Well, then there's never going to be an award if someone receives some services, even if the claim violates the False Claims Act. And I pretty distinctly remember defining false in Timmy 1 to mean a statement for services, a statement that violated the False Claims Act. Starkville. Starkville. Well, that wasn't a holding of the court. And we think that this court certainly would have to look at Brown and Root and Harrison 1 and circuit precedent definition of the fact that a difference in interpretation arising out of a disputed legal question, which is what we think the parties have here. It wasn't a holding. Excuse me, Your Honor? It wasn't a holding. It was not a holding. It was not a holding of the court. It wasn't necessary to the decision or definition? The falsity of the statements I don't think was necessary. For purposes of the Stark Law. For purposes of the Stark Law. No, because the first appeal was not about the False Claims Act. It was just about Stark Law. It was about the Stark Law, as was the entire case. The basis was the IFCA relief. It wasn't the False Claims Act that was forced, is what you're saying. Yes, I am. So you didn't need a definition of false for the IFCA relief. That's right. But we need it now because we're appealing the verdict under the False Claims Act. So I didn't think you needed it for the Stark Law. Because falsity, objective falsity, is not an element of a Stark Law violation. It's a core requirement of a case that alleges fraud on the United States under the False Claims Act. Suffice it to say that Brown en route is, I think, a major impediment to the characterization of this dispute,  And again, Judge Perry gave us that instruction. Judge Seymour refused to do so. We also think, I was getting to this, that the damages is inconsistent with Harrison 2. Judge Duncan, you said that would mean that there would never be any damages in a case like this. You might want to consider making that argument on rebuttal. I will. So sorry. You've been responding to questions and we've taken you past your red line. I'll sit down. Thank you. Ms. Hilmer? Thank you, Your Honor. May it please the Court, I'm Tracy Hilmer on behalf of the United States. Your Honors, this case is about sweetheart deals that benefited Toomey Hospital and 19 select doctors at the expense of the Medicare program and thousands of beneficiaries who had to pay more for medical services because they had nowhere else in town to go. Now that type of deal is exactly what the Stark Law was directed to prevent. And Toomey refuses to accept responsibility. That's why we're here again. After seven years of litigation, Toomey says everybody else got it wrong. The government got it wrong, two juries got it wrong, two district court judges got it wrong. Everybody got it wrong except Toomey. But I'm not saying that about, they think that the first jury got it right on the False Claims Act. But got it wrong on the Stark Law, Your Honor. Got it wrong on the Stark Law. But it is trying to, this is the first opportunity it has had to, correct me if I'm wrong, to challenge the granting of the new trial. It's the first time they've had the opportunity to have a merits review before this Court of that question. But I remind the Court that the standard of review is very high. It's abuse of discretion. It's abuse of discretion, and furthermore, in Eberhardt this Court said that the decision of a judge, a district court judge, to grant or deny a new trial should not be reviewed except in the most exceptional circumstances. So that's the standard that the Court... Was the only basis Judge Perry put forth for granting a new trial that he had excluded 17 pages of the testimonial argument? Judge Perry concluded that those 17 pages were material enough to have prejudiced the government's case that he required a new trial. And I want to... Well, I didn't quite conclude it was 17 pages because you persuaded him, it appears from the transcript, that it was the entire testimony. Your Honor, I beg... Because I'm not reading exactly what you said correctly. Your Honor, I beg to differ. We did have... There were two hearings, and part of the confusion here is that Toomey goes back and forth between the two hearings. The first hearing was on the post-trial motions on June 4th of 2010, and then on June 13th we reconvened to talk about the text of the order. And it is absolutely true that Toomey's lawyer kept raising and raising and raising the same issues that Judge Perry had already dealt with in the June 4th hearing where he announced his intention to grant the new trial and also to enter judgment on the payment by mistake and unjust enrichment claim. This very necessary 17 pages of testimony, I understand the second trial Martin didn't even testify to. We played those 17 pages, Your Honor. We played them as a videotaped deposition, and their effect on the jury was considerable. Obviously, that doesn't convey in the record, but we sat there and watched it, and Judge Seymour had a front row seat for the whole thing, too. Those 17 pages, from your view, nothing was cumulative in there from the thousands of other pages of information provided. It provided very unique information. It provided unique information as to Toomey's scienter, Your Honor. It told the jury... Are you referring to the 17 pages now? Yes. It told the jury that Mr. Martin knew what Mr. McEnany had said, knew of his warnings. He didn't... I mean, I read those 19 pages. His memory was less than pristine. He couldn't remember much of anything about what McEnany told anyone. He remembered enough, Your Honor. He remembered enough, and then there was additional evidence, which I'd like to get to. I first wanted to... Well, when you say additional evidence, we need to focus on the deposition excerpts. Either those were critical materials, or they were not. And I read his testimony, and basically he mentioned something about red flags, concerns, etc. But it was very vague. It seems to me that there was ample evidence in this record that made that same point. And that's my concern. Well, we didn't get to present that Toomey knew that, Your Honor. We didn't get to present anything in the first trial. And what about the correspondence to the board that showed... Go ahead. That was excluded. That was another basis for our new trial motion. That was excluded in the first trial. But it was excluded in the first trial, but included in the second. Yes. And also, Mr. McEnany himself, as Your Honor pointed out, was excluded from the first trial. And also, testimony from Dr. Drakeford's attorney, Greg Smith, who participated in the call with Mr. McEnany. He was not allowed to testify about what Mr. McEnany had said. That was not the basis for the new trial, though. We're talking about giving a new trial. The fact that McEnany was excluded was the basis. The basis was the fact that he had left out 17 pages, as you say, of testimony. Then you got, in the second trial, the benefit of having McEnany testify. But that's not the basis for the new trial. Well, the exclusion of that evidence was error. It was plain error. And this court can address that issue itself and make the Rule 61... And when did you make that contention that the exclusion of that evidence was plain error? Did you make any cross-appeals to this court? We did not make a cross-appeal. We never had an opportunity to do so. We found that the appeal that was in the locatory... What do you mean you couldn't? You could at this stage. Procedurally, this has to make sense. You have to have an opportunity. If the first trial could not be appealed until now, then the other side can make an appeal saying, Hey, Judge Ferry did not properly grant a new trial. We shouldn't have done it. But you can make cross-appeals and indicate errors also that were made during then. That's the only way it gets to us. Well, respectfully, Your Honor, I'm not sure we had that ability. We won the motion for a new trial. We won the second trial. And so there was no reason for the United States to appeal anything. We weren't the adverse... If the basis for the new trial was an error, then there's no need for a second trial. Under that basis, the accepted extent of the equitable rate that this court gave you in terms of remand. That was the only issue appealed, to give you the basis for a new trial. And then the other new trial comes from Judge Perry, who gave it. So the appeal from Judge Perry is now before us in terms of whether he properly granted a new trial. How do we get to the issues that you contend he erred at the first hearing except by cross-appeal? Well, Your Honor, I think it's clear that this... You're arguing it now. We're arguing it... And we can affirm on any basis appearing in the record. Yes, indeed, Your Honor. And we did make these points. That's a relatively new law, but if you can send me a case on it, I'd like to see that. I would be more than happy to supply the court with any authority. I do want to point out that these are issues that we raised in Docket 516, which was our motion for a new trial after the first trial on the False Claims Act. And we raised all of these points, Your Honor, and argued for them. And then, Judge Perry, I would like to point this out because I think that Toomey hasn't been fair to Judge Perry. He did make a ruling on harmless error. It's very clear. And I would draw the court's attention to the June 4th hearing. It's at Joint Appendix 1295 to 1296. And Mr. Lewis, who was Toomey's counsel at that time, came right out and said, and this is under Rule 61, which talks about it being a harmless error inquiry. At its core, the harmless error inquiry asks whether the trial error could or did affect the outcome of the case to the substantial disadvantage of the losing party. And Mr. Lewis argued that the 17 pages didn't do that. And the court said on 1296, this is Judge Perry, Well, you are aware I'm very concerned over the ruling that excluded Mr. Martin's deposition. Frankly, I'm astounded. I've got a problem with that one. I do recognize that in the defendant's view, even so, the government suffered no prejudice. But I think the exclusion of Mr. Martin's testimony was a substantial error. I think that satisfies Rule 61 as to that issue. And then, I'm going to go back to the board to summarize Mr. McAnany's concerns. But the appellant argues that there was an audio plate for the jurors and a transcript that was put in front of them that contained statements by a board member acknowledging that McAnany had concerns about the business arrangements he had reviewed. Was it fair to say that that evidence was, in fact, in the record? That evidence was in the record. But again, Your Honor, there was not in any way, shape, or form the detail. You say the detail. That testimony from Mr. Martin, it had anything but detail. This had happened five years before, four years before this. Other than the fact that he acknowledged his general concerns about the assessment of McAnany, I just don't see that it was all that compelling. Well, I think, Your Honor, if the videotape were watched and Mr. Martin's demeanor observed, that would also have an impact. Because it seemed to us that Mr. Martin had been very coached, and I think the jury saw that too. And obviously, that kind of a question, whether the demeanor of the witness plays onto their credibility, is a fundamental question for the jury. But what I will say, Your Honor, is that we were never allowed, in the first trial, to tell the jury exactly what Toomey knew Mr. McAnany had said through any of these devices. It came out in the second trial that Mr. Hewson, whose notes were also included in the second trial, had conveyed all of this more detailed information to Mr. Martin in that phone call. So this was an error in the first trial that Judge Seaborn corrected in the second trial? Your Honor, Judge Seaborn corrected it, yes. She allowed this evidence in. There was a vigorous motion in limine argument about it. She considered it, and applying this court's rulings in Guerrero, Damien, and Safari, concluded that this matter went to Toomey's knowledge and should be admitted. They had an advice of counsel defense. Mr. McAnany was one of their counsel. So it was critical that we be allowed to show what Toomey knew about what he had said. This court, when it sent back its opinion, went through that trial and put forth evidence. Of course, I didn't think we should do so, but I certainly accept the judgment of the majority opinion, and just laid out what the law was in this case, and laid out where there had been some errors. I don't recall that particular one being one that they brought up. Well, Your Honor, the reason that issue didn't come up is that the only issue before the court on the first trial was the question whether Judge Perry's judgment on the payment by mistake and unjust enrichment claims was proper. The other issue, whether the new trial should have been granted at all, was the subject of a proposed interlocutory appeal, which the court rejected because it didn't meet 1292B standards. So the court didn't address this evidence about Mr. McAnany and the advice of counsel defense generally during the first appeal because it didn't have occasion to. Mr. McAnany was someone who had been, I guess, tamed by both parties for the purpose of being used in a manner that some contend would be a 408-type manner that others, of course, wouldn't. And what was his role? Well, Mr. McAnany was a principal author of the stark regulations and commentary that we've been discussing over these two appeals. He had recently left the government and was in private practice. Why would a hospital ask someone like Mr. McAnany to come in and review this? For what purpose was he there? They wanted to persuade Dr. Drakeford. Dr. Drakeford's lawyer felt that the contracts raised a lot of problems, the very ones that we're talking about. And they wanted Dr. Drakeford to enter into an arrangement. Did he give any testimony in terms of whether he thought the process, or was it his duty at that time that the process that was being undertaken would meet the proper regulations, the stark regulations? I'm sorry, who? In other words, did McAnany? Did McAnany give an opinion in terms of his expertise as to whether he thought the path that the hospital was taking to do this was proper? Mr. McAnany testified that he was specifically asked by Mr. Hewson not to give an ultimate opinion in part because the hospital already had other arrangements in place. So there was a concern. So he was not asked to comment at all or give any thoughts as to whether he thought this process was proper? No, that's not quite right. He just wasn't asked to give the ultimate opinion, write it down, etc. I hear that quite clearly, but I want to understand what you mean. Because my understanding, the other side seemed to contend to some extent that he had some value to them in terms of the information he proposed. Your statement seems to me, well, he can't give an opinion. He's there to persuade Dr. Drakeford and no other purpose. No, I don't think that's why he was there, Your Honor. Why was he there? Well, he was there because Dr. Drakeford's attorney and Toomey's attorney had different views about the legality of this arrangement. Yes. And instead of going to the Office of Inspector General for an opinion from them, an advisory opinion which would have been binding, they decided to go to Mr. McAnany, who previously had been the one who gave those advisory opinions. Yes. And they asked him to give advice about whether the arrangements, it was a joint representation, they asked him to give advice about what the risks would be of going forward with these arrangements. And his testimony, which is a matter of record, is clear. It's somewhat, it's a little bit frustrating that what we have here is a scenario that is at least suggestive of, and in fact, experts opined that the proposals violated federal Medicare laws. And yet we're spending, we don't ever seem to get to that issue. On the first appeal, we were dealing with the award, the equitable damages award made without a jury verdict. And it doesn't ever seem as though we're focusing on the merits of a very significant issue. It is a very significant issue, and I'd be delighted to address the merits, Your Honor. I want to first dispose of a couple of simple questions that I think came up before that delve into the merits here. First of all, we presented claims. We presented 27,000 or more claims to the jury in the form of summary evidence pursuant to Federal Rule of Evidence 1006. What about the referral, the referring physician argument? Yes, well, every single court that's addressed this issue, and we've cited them, has said that the attending and operating physician, at least as a factual matter, falls within the statutory and regulatory definition of referring physician. Judge Seymour covered all the bases. She gave them the definition of attending and operating from the CMS form with Toomey's assent, by the way. They agreed that she could take judicial notice of that. And she gave them, she read them the definition of referral and referring physician. And she left it to the jury to make that decision. You know, in Rogin, it was decided to be a question of law. We thought it could be resolved as a question of law because it's statutory interpretation. So that's one issue under the Stark Law that we can immediately move past. And I want to say one of the reasons we didn't put those claims in front of the jury is that they contain personal health information of Medicare beneficiaries. And what would the jury do with the spreadsheet anyway that showed 27,000 claims? That's why we did the summary the way we did. They had the claims, the actual claims, for three years before that trial. So anything they wanted to say about it, they could. Now, to get down to the heart of this matter here, did these contracts violate the Stark Law? Your Honor, we argued before you last time, we thought you could make that decision as a matter of law. This court felt that a jury trial was needed. In fact, both district judges have also denied a summary judgment and felt that a jury trial was needed. Well, let's talk about what evidence there was. Let me first address the takes into account problem because this court spent so much time talking about that. Your Honor, I have to say that I read the on their face phrase in exactly the way that you just described it. That it was a comment upon what Villafane had not found, that this court felt at least warranted exploration as a factual matter on retrial. And that it wasn't dispositive of all the ways in which the contracts could violate the Stark Law because the definition of remuneration is broad and includes overt and covert and indirect. Indirect. Indirect and direct and also in cash and in kind. So every court that's addressed this question too has held. And the CMS commentary that we've cited to you from the 2007 ruling. So what does it mean when the court says directly that the question which should be properly put to the jury is whether the contract is on their face. When in fact the other side said, well, the court has told you to instruct that. Even if you instruct all the other things, you must instruct that. Because it says it right here and the judge says, no, I'm not going to instruct it on their face. Well, I think, Your Honor, that that argument by Toomey, and I understand why they made it. That's not a Toomey's argument. That's my question to you based upon what I'm reading from the opinion that says the question that should probably be put to the jury. The jury. This jury. In this case. This is a law in this case. Is whether. Because this is the whole part of the majority's opinion that's instructing you on how this trial is going to be conducted. It's not talking. If it wanted to say we want to have all the other stuff, it would have said it. And we're not talking about precedent, because I'm not going to get into the question whether it's advisory or not. It doesn't matter. For this case, it said the jury, this jury, is whether the contracts on their face took into account. Your Honor. And then the other side asked Judge Seymour specifically give that instruction. She says no. Well, I think she did give that instruction. On their face? Did she use that language that's here? She read. She did not use that specific language. She specifically said she wouldn't. Your Honor. Why would she not? She declined to do it because she had already given. I'm going to let you explain, but I want to make sure I get my question answered. She specifically said she would not give that instruction. She declined to give that instruction, Your Honor. She did. Yes, I would like to explain. First of all, she gave the jury the statutory definition of remuneration, which says that remuneration is any remuneration, direct or indirect, overt or covert, in cash or in kind. That covers on its face. The other thing I really feel impelled to point out here, Your Honor, is immediately after this discussion, which follows from the comment on Bill of Fame, is footnote 26, where this court says, for clarification, we emphasize that our holding in Part 3 is limited to the issues we specifically address. On remand, a jury must determine, in light of our holding, whether the aggregate compensation received by the physicians under the contracts varied with or took into account the volume or value of the facility component referrals. If it so finds, a jury must further determine whether the aggregate compensation received by the physicians is nevertheless lawful. So that is the instruction that Judge Seymour gave. That's the one she saw as the complete instruction, not sort of the partial comment about one case that had addressed one issue. I'm sorry. I apologize, Your Honor, if I may just briefly conclude. We believe the jury got it right and had substantial evidence for its verdict. We believe the court properly entered judgment in this case. We respectfully request that this court affirm that judgment. Thank you. Your Honors, if I could start with the Rule 61 issue. Rule 61 is clear. There shall be no new trial based on any evidentiary error absent a finding of substantial prejudice. I have reviewed the record for the last six weeks. There is no finding of prejudice in this record. Can we find that? You have the discretion to certainly reach the issue, and we would ask you to undertake that analysis. We don't think it's possible rationally to find that the exclusion of the Martin evidence actually constituted prejudice. As you were saying, Judge Diaz, there's really nothing in these 17 pages that is particularly overwhelming, and it is indeed cumulative. The best reason why it's cumulative is the July 25, 2010 board meeting minutes show an extended conversation at a board meeting about the McEnany concerns. The government itself on page 83 in its brief had to quote language that wasn't even in the 17 pages of the Martin deposition in order to make its one-paragraph argument on prejudice in this case. If the government had to go outside those 17 pages in its brief to this court, we think that's a concession that there's nothing in the 17 pages that was particularly important. If this court were to consider affirming here based on an alternative ground of Mr. McEnany, we would respectfully submit that there is no reason for this court to bend over backwards to affirm the grant of a new trial based on any error in excluding Mr. McEnany. What is your position on the cross-appeal? I just want to get the procedural positives right because, you know, one of the nice things about being on a felt level is maybe the opinions are right can help the practice a bit. And I'm just interested in terms of the errors from the first trial. Was there in fact a need to make a cross-appeal, or may we just comb through and find any sort of brief on it and see what errors were? I think the best practice would have been to cross-appeal. A cross-appeal what? There has never been an adverse decision for the government. They won the new trial. How did they appeal a decision they won? Let's assume a cross-appeal was not strictly necessary. They would at least, Judge Duncan, they would have at least had to have argued in their brief they should have asked you to affirm on an alternate ground. That's not the procedural, I was sticking with the procedural correctness. There is nothing, there is no order that they did not win. So there would be nothing to take a cross-appeal from. Now there's an alternative argument. Right, and my point is that no matter what you think about the cross-appeal, they have not advanced that argument clearly in their brief to this court. The question is do we need the cross-appeal in this instance? I'm not sure we need to get too hung up on the necessity of a cross-appeal because they clearly didn't argue it to the court and it's their burden certainly in a case or controversy to bring that issue to the court. But can I focus on the substance of that alternate ground? This court would be bending over backwards to affirm a blatant Rule 61 violation based on McEnany who's not even before you. And to do that, you'd have to find that Judge Perry abused his discretion in excluding McEnany. And when Judge Seymour let McEnany in, she didn't say he'd gotten it wrong, she just said, I find it relevant. She gave a one-sentence rationale. Well, apparently we went from a finding of no damages under the False Claims Act to significant damages under the False Claims Act. So it does appear that the second time when the evidence was admitted, it did certainly lead to a different result. And this is explained by Judge Seymour's failure to instruct on Brown and Root that the difference of opinion about a legal question is not a false statement. That's what we got the first time around and didn't get the second time around. We think that was probably the game changer. But in terms of the government getting McEnany in the second time, Judge Duncan, that shows how unfair all of this was because there was only a new trial based on any error with respect to Martin. So the government gets their new trial because of 17 pages that don't show any prejudice and they get a total redo that lets them get in because they had a new district court judge, a lot of evidence that was excluded the first time. But there's no basis for saying that Judge Perry abused his discretion when he didn't let McEnany in. So you want us to accept the finding on the False Claims Act in your favor and ignore the finding on the Stark Law? We're respectfully saying that we don't think the government proved a Stark Law violation consistent with this court's instructions for how that was supposed to happen on remand. But if you disagree with us, we think they still have big problems under the False Claims Act and they certainly have problems with respect to damages. The government did not, if I could address one other point... If you don't mind doing so in a conclusive and concluding fashion. I will. So for all of these reasons, we would ask this court to enter judgment in Toomey's favor based on the absence of sufficient evidence under this court's opinion. The alternative, we would ask that you vacate the judgment and reinstate the first verdict based on the black letter, Rule 61 violation. But at a minimum, we would ask you to vacate the award for a recalculation of damages consistent with Harrison 2 and penalties consistent with the 8th Amendment. For the government to affirm here, there are six major legal hurdles that they have to clear to get to the finish line. You would have to find a Stark Law violation, adopt all of their theories, which no court in this country has ever done. We estimate that 10,000 contracts in this circuit alone would be invalidated if this court were to embrace the government's Stark Law theories. We don't have that in the record. Do we have that in the record? It's a matter of law. If you search the Court of Appeals opinions, you'll not find one Court of Appeals that has embraced, for instance, the one-to-one correlation theory. This case has been much watched in the healthcare bar. It would be a controversial ruling. You'd have to distinguish Brown and Root under the False Claims Act. You'd have to distinguish Harrison 2. You'd have to adopt an applied certification theory. You'd have to find there's not even a constitutional concern with a quarter of a billion-dollar judgment that will put the False Claims Act defendant out of business. And you'd have to find that any error in excluding Mr. Martin actually swayed the jury in this case. We don't think that's possible, so we would ask you to rule in our favor. Thank you. Thank you very much, Ms. Walker. We will come down and greet counsel and proceed directly to the next case.
judges: Allyson K. Duncan, James A. Wynn, Jr., Albert Diaz